IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| Dana West, | ) | C.A. No. 7:23-cv-06115-DCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| Contec, Inc. and Does 1–100 inclusive, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant Contec, Inc.'s ("Defendant Contec") Motion to Dismiss. ECF No. 6. Plaintiff filed a Response in Opposition, and Defendant Contec filed a Reply. ECF Nos. 12, 13. For the reasons set forth below, the Motion to Dismiss is granted in part and denied in part.

## I. BACKGROUND

This case arises from the adverse health consequences suffered by Plaintiff because of exposure to Peridox Sporicidal Disinfectant Cleaner ("Peridox"), which contains peracetic acid ("PAA"), "a known asthmagen . . . and respiratory sensitizer[.]" ECF No. 1 at 2. Defendant Contec manufactures and markets Peridox. *Id.* Defendant Contec advertises Peridox as a three-minute sporicidal disinfectant cleaner with a 99.9999% sporicidal efficacy and claims Peridox is the first viable alternative to bleach-based products. *Id.* at 5. However, the presence of PAA, which is the main component in Peridox, presents serious health risks even at low levels of exposure. *Id.* at 5, 7–9. Despite notices of these serious risks, Defendant Contec took no affirmative action to

analyze, test, study, or recall Peridox or warn the public concerning these risks.  *Id.* at 2, 9–10.

Plaintiff worked as an Oncologist Nurse at North Florida in the Chemotherapy Center in Fleming Island ("North Florida").  *Id.* at 6.  On or about December 2020, a pharmacist technician in the unit where Plaintiff worked started using Peridox, and, immediately thereafter, Plaintiff experienced severe asthma-like symptoms.  *Id.*  After the initial exposure, Plaintiff also experienced respiratory problems, consistent coughing, and difficulty breathing when she was exposed to Peridox.  *Id.*  In March 2021, after another exposure to Peridox, Plaintiff experienced adverse health consequences that resulted in her admittance to the Emergency Room for breathing treatments.  *Id.*  A few days later, Plaintiff again was admitted to the Emergency Room and "diagnosed with respiratory distress, exacerbated asthma, vocal cord dysfunction, vocal muscular tension dysphonia, and severe reactive airway disease."  *Id.*  Other employees at the facility where Plaintiff worked also complained of the smell associated with Peridox and symptoms incurred from exposure to the product.  *Id.* at 7.  Currently, Plaintiff is considered permanently disabled and is no longer able to work in a hospital setting.  *Id.* at 6.  Prior to Plaintiff's initial exposure to Peridox, she was relatively healthy and only experienced mild asthma symptoms.  *Id.* at 7.

On November 29, 2023, Plaintiff filed a Complaint in this District asserting causes of action for (1) strict liability for design defect, manufacturing defect, and failure to warn; (2) negligence; (3) breach of express warranty; (4) breach of implied warranty, (5) intentional misrepresentation; and (6) negligent misrepresentation.  *Id.* at 13–34.  On January 18, 2024, Defendant Contec filed a Motion to Dismiss for Failure to State a Claim.

2

ECF No. 6.[1]  On February 1, 2024, Plaintiff filed a Response in Opposition, and on February 8, 2024, Defendant Contec filed a Reply.  ECF Nos. 12, 13.  Accordingly, this matter is ripe for review.

## II. APPLICABLE LAW

### A. Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses . . . . Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal quotation marks and citation omitted). In a Rule 12(b)(6) motion, the court is obligated "to assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in the light most favorable to the nonmoving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

---

[1] Defendant Contec moves to dismiss Plaintiff's complaint it its entirety.  ECF No. 6, at 1.  However, Defendant Contec does not address Plaintiff's claim for negligence in its motion.  *See id.*  Because Defendant Contec makes no argument for the dismissal of Plaintiff's negligence claim and neither party addresses the claim in their respective briefing, the Court declines to address this claim at this juncture and it may proceed.

(2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. ANALYSIS

As an initial matter, "[a] federal court sitting in diversity is required to apply the substantive law of the forum state, including its choice-of-law rules." *Francis v. Allstate Ins Co.*, 709 F.3d 362, 369 (4th Cir. 2013) (citations omitted). "Under South Carolina rules, tort claims are governed by the substantive law of the state in which the injury occurred[.]" *Charleston v. Marine Containers Inc. v. Sherwin-Williams Co.*, 165 F. Supp. 3d 457, 469 n.12 (D.S.C. 2016) (citation omitted). Here, it is undisputed that Plaintiff's injury occurred in Florida and Florida law should apply in this case. *See* ECF Nos. 6 at 3; 12 at 3. Accordingly, the Court will apply the substantive law of Florida in deciding Defendant Contec's Motion.

### A. Strict Product Liability

Plaintiff brings three claims for strict liability based on Defendant Contec's design defect, manufacturing defect, and failure to warn. ECF No. 1 at 13–18. Defendant Contec contends that all of Plaintiff's strict liability claims fail to state a claim because Plaintiff fails to allege "sufficient facts to state a plausible claim that Peridox . . . [is] defective and unreasonably dangerous." ECF No. 6 at 4. Specifically, Defendant Contec argues that the Complaint contains several potential harmful consequences from exposure to Peridox . . . , and "none of the potential harmful consequences . . . differ from potential harmful

consequences of exposure to any number of cleaning products." *Id.* at 4. In addition, Defendant Contec asserts that Peridox cannot be made entirely safe for all uses and Plaintiff's mere allegations she suffered harm from exposure to Peridox is insufficient to a state a plausible claim that the product is defective or unreasonably dangerous. *Id.* at 5. Defendant Contec further contends Plaintiff has failed to allege facts linking her injuries to a defect in Peridox. *Id.*

In Response, Plaintiff contends that she adequately alleges facts to support a products liability claim because "[u]nder Florida law, product liability plaintiffs are not required to set forth in the complaint the precise chemical, biological, or other process by which the defective product causes the alleged harm[.]" ECF No. 12 at 4. Plaintiff instead argues that she need only put Defendant Contec on notice of the harm allegedly suffered because of the design defect. *Id.* She relies, in part, on the alleged injuries listed in the Complaint, which include but are not limited to extreme coughing, burning of the skin and eyes, respiratory distress, and severe reactive airway[.]" *Id.* Moreover, Plaintiff asserts that she "identified a link between her injuries and the defective chemical product" and "the existence of a product defect and the proximate cause of the defect on [her]." *Id.* As to Defendant Contec's argument that Peridox is not harmful because other cleaning products have dangerous effects, Plaintiff contends that such a fact is not capable of judicial notice and just because other harmful products are on the market does not mean Defendant Contec's product is defective and unreasonably dangerous. *Id.* at 5.

In Reply, Defendant Contec contends that Plaintiff's fails to allege a specific defect in the product as required by Florida law and "only points to [PAA]." ECF No. 13 at 1–2. According to Defendant Contec, "[t]he fact that [PAA], alone, may be harmful does not

automatically translate to the notion that Peridox . . . [is] also defective and unreasonably dangerous[.]" *Id.* at 3.

Having reviewed the arguments and submissions of the parties, the Court denies Defendant Contec's Motion to Dismiss as to Plaintiff's products liability claim. "To state a claim in Florida for strict products liability based on a design or manufacturing defect, a plaintiff must plead three elements: (1) a relationship between the defendant and the product; (2) a defect which caused the product to be unreasonably dangerous; [and] (3) causation between the defect and the harm suffered by the user." *Dye v. Covidien LP*, 470 F. Supp. 3d 1329, 1334 (S.D. Fla. 2020) (citation omitted).

Here, Plaintiff sufficiently alleges a claim for strict products liability. As to the first element, Plaintiff alleges that "Contec manufactures and markets Peridox Sporicidal Disinfectant Cleaner, an EPA-registered sporicide." ECF No. 1 at 5. With respect to the second element, Plaintiff alleges that Peridox contains PAA. ECF No. 1 at 1–2. While Defendant Contec argues the presence of PAA alone is insufficient to allege Peridox was defective or unreasonably dangerous, ECF No. 13 at 1–2, Plaintiff alleges exposure to PAA, even at low levels, presents serious health risks that Defendant Contec failed to evaluate or disclose, ECF 1, at 8–9. Thus, taking Plaintiff's allegations as true, the presence of PAA by itself in Peridox is sufficient to state a cause of action in that it may constitute a defect that caused the product to be unreasonably dangerous. *See Dye*, 470 F. Supp. 3d at 1335 ("[The Complaint] alleges at least four specific defects with the Product, and Plaintiff claims these defects caused either an infection or an inflammatory response. This is sufficient to put Defendant on notice of the alleged defects with the Product") (citation omitted); *see also Shapiro v. NuVasive, Inc.*, C.A. No. 19-23163, 2019

WL 5742159, at *2 (S.D. Fla. Nov. 5, 2019) ("[T]he law only requires [the plaintiff] to identify a defect that she contends caused her injury. It does not require [the plaintiff] to prove the [product] w[as] in fact defective." (citation omitted)). As to the third element of causation, Plaintiff alleges that after being exposed to Peridox, "she began to experience negative health consequences from the chemical."  ECF No. 1 at 2.  Taking Plaintiff's allegations as true, the Court finds Plaintiff has sufficiently alleged all the elements of strict products liability under Florida law.  *Dye*, 470 F. Supp. at 1334.  Accordingly, Defendant Contec's Motion is denied as to Plaintiff's claims for strict liability.

## B. Express Warranty

Plaintiff also brings a claim for breach of express warranty based on Defendant Contec's express warranties that "(1) . . . Peridox . . . w[as] safe and fit for use by healthcare professionals, consumers, users, including Plaintiff; (2) . . . Peridox . . . w[as] fit for its intended purpose; (3) . . . Peridox . . . w[as] of merchantable quality; (4) . . . Peridox . . . did not pose any unreasonable risks or dangers; and (5). . . Peridox . . . w[as] adequately tested and found fit for its intended use." ECF No. 1 at 22–23. Defendant Contec contends that "Plaintiff's claim for breach of express warranty must be dismissed because Plaintiff failed to provide pre-suit notice under [Fla. Stat. §] 672.607(3)(a)."  ECF No. 6 at 6.  Defendant Contec argues that notice is required because it qualifies as a manufacturer or distributor and under Florida law "[a] manufacturer or distributor is entitled to notice of a breach of express warranty" and asserts that the legislative intent of the statute is to provide defendants an opportunity to cure defects.  *Id.*

Plaintiff responds with two arguments. First, she argues Defendant received sufficient notice because Defendant Contec knew or should have known about (1)

numerous complaints have already been made about Peridox; (2) Plaintiff's workers' compensation claim due to the product; (3) the health concerns surrounding Peridox cleaner from various public health reports, hospital-staff employee complaints, and internal complaints; and (4) Plaintiff complained to her employer about her injuries suffered upon exposure.  ECF No. 12 at 8–9.  Second, Plaintiff contends pre-suit notice was not required because Defendant Contec is a manufacturer and it has not been established in Florida whether a manufacturer is considered a seller under Fla. Stat. § 672.607(3)(a) and thus entitled to notice.  *Id.* at 7.

In Reply, Defendant Contec contends that notice is required because Plaintiff alleges in the Complaint that Defendant Contec is a seller.  ECF No. 13 at 3.  In addition, it argues that Plaintiff's prior complaint submitted to her employer and workers' compensation claim are entirely absent from the Complaint filed here, and she "cannot satisfy the [notice] requirement by asserting it as fact in her response brief."  *Id.* at 4.

Having reviewed the arguments and submissions of the parties, the Court grants Defendant Contec's Motion to Dismiss as to Plaintiff's claim for breach of express warranty.  Under Florida law, to state a claim for breach of express warranty, a plaintiff must show "(1) the sale of goods; (2) the express warranty; (3) breach of the warranty; (4) notice to seller of the breach; and (5) the injuries sustained by the buyer as a result of the breach of the express warranty."  *Rice v. DCI Donor Servs.*, C.A. No. 5:21-cv-135-MW/MJF, 2024 WL 2646628, at *3 (N.D. Fla. Mar. 4, 2024) (citation omitted).

At issue here is statutorily required notice.[2]  Under Fla. Stat. § 672.607(3)(a), a

_____

[2] While Defendant Contec raises Plaintiff's failure to allege facts related to the sale of Peridox in the context of Plaintiff's breach implied warranty claim, the Parties only raise the issue of notice concerning Plaintiff's breach of express warranty claim.  Because the

"buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]"  Fla. Stat. § 672.607(3)(a).  "The pre-suit notice requirement[] is intended to give the seller an opportunity to inspect the defect[ive] product and cure any breach prior to the initiation of litigation." *Fineman v. Ferragamo USA Inc.*, 672 F. Supp. 3d 1302, 1307 (S.D. Fla. 2023) (citations omitted).  In addition, "[t]he buyer bears the burden of showing that *[s]he* gave the required notice within a reasonable time."  *Valiente v. Unilever United States, Inc.*, C.A. No. 22-21507, 2022 WL 18587887, at *16 (S.D. Fla. 2022) (quoting *Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1102 (11th Cir. 1983)) (emphasis added).

First, the Court finds Plaintiff's allegations regarding notice are insufficient to show *she* gave the required notice within a reasonable time.  Plaintiff's contentions Defendant Contec was on notice because of the numerous complaints already made about Peridox and the health concerns surrounding Peridox from various public health reports, hospital-staff employee complaints, and internal complaint do not sufficiently allege *Plaintiff* gave the required notice within a reasonable time. Indeed, complaints made and filed by other individuals, with no connection to Plaintiff, are not sufficient to provide notice to a seller as a matter of law of Plaintiff's complaints. *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1323 (S.D. Fla. 2020).  Furthermore, the existence of Plaintiff's workers' compensation claim, even viewed in the light most favorable to Plaintiff, is insufficient to allege that she informed Defendant Contec of Peridox's alleged defects.  ECF No. 1 at 6.  Plaintiff does

---

Parties have not raised any other issues as to express warranty, the Court does not address them and address only the issue of notice.

not allege Defendant Contec was party to or otherwise at all aware of Plaintiff's workers' compensation claim nor does she provide a copy of her claim or even allege the contents of it. *Id.* There are no facts alleged to support a reasonable inference that Defendant Contec was on notice based upon the filing of Plaintiff's workers' compensation claim. *Id.* Furthermore, Plaintiff cites to no case law, and the Court is unaware of any, to support the contention that the existence of a workers' compensation claim alone would provide a third party with notice of a defective product. *See* ECF No. 12. Despite Plaintiff's arguments to the contrary, there are no allegations in the Complaint that *Plaintiff* notified Defendant Contec of any alleged breach. *See* ECF No. 1*.* Accordingly, the Court finds Plaintiff has failed to allege she provided pre-suit notice to Defendant Contec as required under Florida law.

Second, the Court finds Plaintiff's arguments that Defendant Contec was not entitled to notice unpersuasive. As provided above, Florida law is clear that sellers are entitled to pre-suit notice prior to the filing of an action for breach of express warranty. *Rice*, 2024 WL 2646628, at *3; Fla. Stat. § 672.607(3)(a). However, Florida "courts are not in agreement as to whether the notice requirement applies to the manufacturer of a product. Some Court courts [have found] that the notice requirement does not apply to manufacturers based on the plain language of § 672.607(3)(a), which requires the buyer to notify 'the seller' of the breach." *Id.* at *16 (citations omitted). The plain language of Fla. Stat. § 672.607(3)(a) only provides that "a buyer must within a reasonable time after he or she discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Fla. Stat. § 672.607(3)(a). Plaintiff relies on this split in the case law to argue that notice was not required here because Defendant Contec was a

manufacturer, and the statute does not obligate a buyer to provide notice to a manufacturer.  ECF No. 12 at 7.  Throughout the Complaint, however, Plaintiff repeatedly alleges that Defendant Contec is a *seller* of Peridox.  ECF No. 1 at 3, 5, 7, 13–15, 16, 18, 19, 21, 23, 24, 33.   Under Florida law, "'[s]eller' means a person who sells or contracts to sell goods."  Fla. Stat. § 672.103(1)(d).   While Plaintiff makes multiple allegations pertaining to Defendant Contec's manufacture of Peridox, "[t]here is no apparent reason why [Defendant Contec] should be excluded from th[e] definition [of a seller] merely because it is *also* the maker of the [goods] in question."  *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 446 F. Supp. 3d 218, 227 (E.D. Mich. 2020) (citing Fla. Stat. § 672.607(3)(a); Fla. Stat. § 672.103(1)(d)).

Plaintiff urges the Court to find Defendant Contec was not entitled to pre-suit notice because it was solely a manufacturer of Peridox and not a seller and follow the reasoning in *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313 (S.D. Fla. 2020).  ECF No. 12 at 7–8.  In *Toca*, the Court found the defendants were not entitled to pre-suit notice when they were solely manufacturers in the context of the case as they were not alleged to have sold the product directly to consumers like the plaintiff.  430 F. Supp. at 1323.  Under the facts as alleged here, however, the Court finds *Toca* unpersuasive.  As stated, Plaintiff repeatedly alleges Defendant Contec sells Peridox, and there are no allegations Peridox was purchased from a third-party seller and not directly from Defendant Contec.[3]  *See* ECF

---

[3] Indeed, there are no specific allegations in the Complaint about the sale and purchase of Peridox in this case or how it came to be in the possession of the pharmacist technician at Plaintiff's place of employment.  *See* ECF No. 1.  Rather, Plaintiff generally alleges on numerous occasions that Defendant Contec sold Peridox.  *Id.* at 3, 5, 7, 13–15, 16, 18, 19, 21, 23, 24, 33.

No. 1.  Based on Plaintiff's allegations, Defendant Contec acted as *both* a manufacturer and seller in this case and was therefore entitled to pre-suit notice.

As outlined above, Plaintiff has not sufficiently alleged she gave Defendant Contec such notice.  Accordingly, Defendant Contec's motion to dismiss is granted as to Plaintiff's breach of express warranty claim.

## C. Implied Warranty

Plaintiff also brings a claim for breach of implied warranty.  ECF No. 1 at 24–25.  Defendant Contec contends that Plaintiff's claim for breach of implied warranty should be dismissed because "she cannot establish privity between herself and Contec."  ECF No. 6 at 7.  Specifically, Defendant Contec argues that "Plaintiff's complaint fails to allege the existence of any contractual relationship or privity between Plaintiff and Contec.  In the absence of a contractual relationship or privity between Plaintiff and Contec, her breach of implied warranty claim fails as a matter of law and is due to be dismissed."  *Id.* at 8.

Plaintiff does not argue she is in privity with Defendant Contect, but rather she contends that direct privity between Plaintiff and Defendant Contec is not required because she qualifies as a third-party beneficiary.  ECF No. 12 at 9, 11.  She argues that "even though [she] was not a party to the contract, she was the third-party member of the class of persons to whom the Product was intended to benefit – i.e., healthcare workers and therefore had properly alleged a claim for breach of the implied warranty of habitability."  *Id.* at 11.

In Reply, Defendant Contec contends that "Plaintiff's complaint . . . fails to allege facts sufficient to state a plausible claim that she was a statutory third-party beneficiary."  ECF No. 13 at 5.  Moreover, Defendant Contec argues that the Complaint fails to identify

who purchased Peridox or Plaintiff's relationship to the purchaser. *Id.* Defendant Contec asserts that the Complaint only "states that [Plaintiff] was exposed to Peridox when a pharmacist technician began using" the product and fails to allege that she was a user of the product. *Id.*

Having reviewed the arguments and submissions of the parties, the Court grants Defendant's Motion to Dismiss as to Plaintiff's claim for breach of implied warranty. "Under Florida law, privity of contract is required to maintain an action for breach of an implied warranty." *Rife v. Newell Brands, Inc.*, 632 F. Supp. 3d 1276, 1302 (S.D. Fla. 2022) (citation omitted). "[A] plaintiff who isn't in privity with the manufacturer of a defective product cannot bring an implied-warranty claim against that manufacturer unless (1) [s]he's in privity with the manufacturer or (2) [s]he fits into one of the three exceptions outlined in § 672.318." *Id.* at 1304–05. Under Florida law, an implied warranty may extend to a third-party beneficiary if the beneficiary is

> [A]ny natural person who is in the family or household of his or her buyer, who is a guest in his or her home or who is an employee, servant or agent of his or her buyer if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the warranty.

Fla. Stat. § 672.318

Here, Plaintiff fails to sufficiently allege that she is a third-party beneficiary under Florida law. As noted above, Plaintiff cannot state a claim against Defendant Contec, the manufacturer of Peridox, unless she establishes that she is either in privity with Defendant Contect or an anticipated third-party beneficiary as set out under Fla. Stat. § 672.318. *See Rife*, 632 F. Supp. 3d at 1304–05. Plaintiff does not contest that she is not in privity with Defendant Contec, so the Court turns to whether she is an anticipated third-party

beneficiary. Plaintiff does not allege that she either "is in the family or household of [the] buyer" or "a guest in his or her home[.]" *See* ECF No. 1; Fla. Stat. § 672.318. Plaintiff argues Defendant sold Peridox to her employer, so she was a third-party beneficiary anticipated by Fla. Stat. § 672.318. ECF No. 12, at 11. However, in her Complaint, Plaintiff only alleges that "a pharmacist technician began using Peridox in the pharmacy unit at [the] North Florida facility [where Plaintiff worked], and Plaintiff immediately started suffering from severe asthma-like symptoms." ECF No. 1 at 6. Plaintiff does not allege that the pharmacist technician was her employer or that her employer purchased Peridox nor does she allege it is reasonable to expect that she would be affected by the use of Peridox. *See id.* Therefore, the Court finds Plaintiff has failed to sufficiently allege a claim for breach of implied warranty. Accordingly, Defendant's Motion to Dismiss is granted as to Plaintiff's claim for breach of implied warranty.

### D. Misrepresentation

Finally, Plaintiff brings two claims based on Defendant Contec's alleged misrepresentations to her—one for intentional misrepresentation and one for negligent misrepresentation—based on Defendant Contec's representations that Peridox had been tested and found safe and effective for use as a daily disinfectant and automated dilution management system. ECF No. 1 at 25–34. Defendant Contec contends both Plaintiff's claims for misrepresentation should be dismissed because she "has not identified any alleged fraudulent or false misrepresentation between Defendant [Contec] and herself upon which she justifiably or reasonably relied." ECF No. 6 at 8. According to Defendant Contec, "[t]here is a complete absence of facts to support a plausible claim that Plaintiff relied or justifiably relied on any representation by Contec." *Id.* at 9. Further, Defendant

Contec argues Plaintiff fails to plead fraud with specificity as required by Federal Rule of Civil Procedure 9 because the Complaint "is completely lacking in detail as to who made the alleged misrepresentations, when they were made, or where they were made." *Id.* at 10.

In contrast, Plaintiff contends she sufficiently alleges causes of actions for intentional misrepresentation and negligent misrepresentation. ECF No. 12 at 13–14. With respect to intentional misrepresentation, Plaintiff argues that the Complaint is sufficient because it "alleges that Contec made material misrepresentations to healthcare professionals, consumers, Plaintiff, and/or the general public, fraudulently concealed material facts, and intentionally omitted material information." *Id.* at 15 (internal quotation marks omitted). As to negligent misrepresentation, she argues that the Complaint is sufficient because it "alleges that Defendant made material misrepresentations of fact by claiming that Peridox . . . has been tested and was found to be safe and effective for use as a daily disinfectant" and that the misrepresentations were "intended to induce Plaintiff to rely on the representation that the product was safe[.]" *Id.* at 13. Plaintiff also relies, in part, on language in the Complaint that states "Defendant knew or should have known that the information they intentionally distributed was false but continued to advertise the product as safe." *Id.* at 14. In response to Defendant Contec's argument that the Complaint fails to plead fraud with specificity, Plaintiff contends that she "alleges that Contec intentionally misrepresented the safety of the product with particularity and its state of mind generally." *Id.* at 16.

In Reply, Defendant Contec contends that Plaintiff fails to allege any actions taken in reliance based on Defendant Contec's misrepresentations. ECF No. 13 at 5.

Defendant Contec relies, in part, on the fact that Plaintiff did not purchase Peridox or use the product. *Id.* In addition, it argues that Plaintiff fails to allege any specific representations made to her. *Id.* at 6.

The Court finds Plaintiff has failed to state a claim for either intentional misrepresentation or negligent misrepresentation. Under Florida law, to state a claim for intentional misrepresentation, a plaintiff must allege: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010) (citation omitted). To state a claim for negligent misrepresentation requires (1) a misrepresentation of material fact; (2) the representer either knew of the misrepresentation, made the misrepresentation without knowledge of its truth or falsity, or should have known the representation was false; (3) the representer intended to induce another to act on the misrepresentation; and (4) injury resulted to a party acting in justifiable reliance upon the misrepresentation. *Linville v. Ginn Real Estate Co., LLC*, 697 F. Supp. 2d 1302, 1307 (M.D. Fla. 2010) (citing *Coral Gable Distrib., Inc. v. Milich*, 992 So. 2d 302, 303 (Fla. Dist. Ct. App. 2008)). While unlike a claim for intentional misrepresentation, "a claim for negligent misrepresentation under Florida law requires a showing that the recipient of the information justifiably relied on the erroneous information," both causes of action require a plaintiff to *act in reliance* on a misrepresentation. *Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 310 (Fla. Dist. Ct. App. 2011) (citing *Butler*, 44 So. 3d at 105). "Reliance means that [the plaintiff] must show that [the defendant] made a misrepresentation that she *personally*

16

relied upon." *Foreline Sec. Corp. v. Scott*, 871 So. 2d 906, at 910 (Fla. Dist. Ct. App. 2004) (citing *Lance v. Wade*, 457 So. 2d 1008, 1010–11 (Fla. 1984)) (emphasis added). To prevail on either an intentional or negligent misrepresentation claim, "[the plaintiff] must have known about and relied upon a misrepresentation of fact; she cannot rely on any statement . . . about which she had no knowledge." *Id.*

While Plaintiff alleges she relied on Defendant Contec's representations generally, Plaintiff never alleges such misrepresentations were made by Defendant Contec to her or that she was aware of the general representations Defendant Contec made to the public concerning the safety and effectiveness of Peridox before her exposure to it and subsequent injuries. *See* ECF No. 1 at 28, 30, 32–33. Indeed, Plaintiff's allegations that she was exposed to Peridox after it was used by other employees at North Florida, rather than due to any personal use, support the opposite conclusion: Plaintiff had no personal knowledge of Defendant Contec's representations when she was exposed to Peridox. Without allegations of her personal knowledge of Defendant Contec's representations concerning Peridox, Plaintiff has failed to sufficiently allege she acted in reliance or justifiable reliance on Defendant Contec's misrepresentations. *Foreline*, 871 So. 2d at 910. For the foregoing reasons, Defendant Contec's Motion to Dismiss is granted as to Plaintiff's claims for intentional misrepresentation and negligent misrepresentation.

## IV. CONCLUSION

For the reasons set forth above, Defendant Contec's Motion to Dismiss [6] is **GRANTED in part and DENIED in part**. Accordingly, Plaintiff's claims for breach of express warranties, breach of implied warranties, intentional misrepresentation, and

negligent misrepresentation are dismissed without prejudice.[4]  Plaintiff's other claims may

proceed as set out in the order.

      IT IS SO ORDERED.

s/ Donald C. Coggins, Jr.<br>
United States District Judge

September 17, 2024
Spartanburg, South Carolina

---

[4] In her Response, Plaintiff requests leave to amend the Complaint should the Court find it deficient.  ECF No. 12 at 9, 16.  Plaintiff, however, has not filed a separate motion seeking leave to amend nor has she provided the Court with a proposed amended complaint or indicated in her briefing any proposed amendments to her Complaint.  *See id.*  While "the [C]ourt should freely grant give leave when justice so requires," leave to amend may be denied where "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009). Plaintiff's "failure to submit a proposed amended complaint or to explain in detail in [her] motion the claims it seeks to assert and the factual bases upon which those claims would be asserted severely handicaps th[e] [C]ourt's ability to determine whether or not the amendment would be proper."  *D.R. Horton, Inc. v. Landbank Fund VIII, LLC*, No. 4:08-CV-1711-TLW-TER, 2009 WL 10678195, at *1 (D.S.C. Mar. 31, 2009).  Without an amended complaint or proposed amendments, the Court cannot determine whether granting leave to amend is proper under the circumstances. *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618 (4th Cir. 2008) (holding the district court did not abuse its discretion in denying leave to amend where the plaintiffs never filed a motion seeking leave nor presented the district court with a proposed amended complaint).